Upon the trial before Bailey, J., at Lincoln, on the last circuit, the case was that the defendants found the wagon standing in the street, and for the purpose of having sport they ran it through the street and down a hill, whereby it was injured as charged in the indictment, and where they left it.
His Honor instructed the jury that if the defendants injured the wagon from mere sport and wantonness they were guilty, although they had no malice against the owners.
The defendants were convicted and appealed.
The distinction between those injuries which are regarded (130) simply as trespasses on the rights of individuals, and those which amount to a violation also of the duties due to the community, ought to be accurately drawn and carefully observed. We fear that this has not been done in this State with respect to the wrongs known under the general name of "malicious mischief," and apprehend that this confusions has been the result of treating as common law offenses, acts which owe their existence, as crimes, wholly to positive statutes. For reasons which have been assigned in the case of the State v. Scott (2 Dev. and Bat., 35), it is too late now to question whether an indictment for malicious mischief may not be sustained as for a misdemeanor at common law, but there is difficulty in laying down clearly the necessary constituents of that offense. It is obvious if "malicious" be understood in its legal sense of intending wrong, and "mischief" mean any harm done to another's property, that almost every trespasser on property may be made the subject of criminal prosecution. The description of malicious mischief usually given by the writers on criminal law, that is to say, "such damage as is done to private property, not animo furandi, *Page 104 
or with an intent of gaining by another's loss, but either out of spirit of wanton cruelty or black and diabolical revenge," may answer as a general indication of those common law trespasses, which, by a multitude of statutes, have been raised into crime, but it is too destitute of precision to constitute a legal definition. What spirit of severity shall be deemed a spirit of cruelty — what degree of cruelty mounts up to wanton cruelty — and what intensity of revenge is required to render it black and diabolical — may be considerations in the exercise of legislative discretion, but cannot be fit subjects of judicial ascertainment, nor furnish of themselves rules of public justice suspectable of steady and uniform application. We can discover no other mode in which we shall at the same time pay becoming deference to proceeding adjudications, and secure to the public that certainty which is indispensable in the administration of criminal justice, than to hold such invasions of private property to be indictable as malicious mischief, which are unquestionably within the limits of those adjudications, and to treat all others as private or civil (131) wrongs, until the Legislature shall think proper to impress upon them a different character. Governed by these views we extract from the adjudged cases as a rule of decision that malicious mischief to be indictable, consists in the wilful destruction of some articles of personal property, from actual ill-will or resentment towards its owner or possessor. State v. Landreth, 2 Law Rep., 446; State v. Simpson, 2 Hawks, 460.
It is the opinion of this court that there was error in the charge of the judge below, and that the judgment rendered against the defendants be reversed and a new trial ordered.
PER CURIAM. Judgment reversed.
Cited: S. v. Helmes, 27 N.C. 365; S. v. Jackson, 34 N.C. 330; S. v.Sheets, 89 N.C. 548. *Page 105